# DOUGLAS M. BROOKS v. STATE OF MARYLAND

[No. 352, September Term, 1982.]

*Decided December 8, 1982.*

The cause was argued before MORTON, LISS and WILNER, JJ.

Note: *Certiorari* denied, Court of Appeals of Maryland, March 24, 1983.

*Gary W. Christopher, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Ann E. Singleton, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Sam Brave, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

On December 9, 1980, Douglas M. Brooks, appellant, was charged by indictment in the Criminal Court of Baltimore with rape in the first and second degrees, robbery, and lesser included counts. He pleaded not guilty and elected a jury trial. On January 20, 1982, after a trial, the jury returned verdicts of guilty of robbery and first degree rape. No verdict was returned on the count charging second degree rape. Sentences were imposed and appellant noted this appeal. He raises the following issues to be determined by this Court:

I. Whether the evidence was sufficient to support appellant's conviction for first degree rape?

II. Whether the trial judge abused his discretion in refusing to instruct the jury as requested by appellant as to the following:

A. Having instructed the jury that the State bore no burden to disprove appellant's alibi, did the court err in refusing to give the alibi instruction requested by appellant?

B. Did the court err in refusing to instruct on the principal of reasonable doubt in the manner requested by appellant?

C. Did the court err in refusing to instruct the jury on the ease of making and the difficulty of defending against the charge of rape?

D. Did the court err in refusing to give appellant's "dual susceptibility" instruction?

The victim in this case testified that at approximately 8:30 p.m. on October 21, 1980, while walking home from classes at Morgan State University in Baltimore City, she encountered a man on Cold Spring Lane whom she later identified as the appellant. She testified that the man approached her, identified himself as a student at Coppin State College, and inquired as to where he might catch the number 64 bus. The victim explained that she "didn't know where it is," and the two of them continued to walk toward her apartment, which was several blocks away. When they arrived, the man asked if he might use the telephone to call a taxicab. She agreed and allowed him in to the kitchen to use the telephone while she hung up her coat. He told her the cab would arrive within a few minutes and she allowed him to wait inside while she talked on the telephone with a friend. The conversation lasted approximately five minutes. After she completed the call, she walked past the man and he touched her thigh. She requested that he leave immediately. The man suddenly hit her with his fist twice in the face and said, "Well, take your clothes off." She complied, but pleaded with him, trying to "talk him out of whatever he had in his mind." He told her to shut up and motioned like he was going to strike her again. He then forced her onto the couch and forced her to have intercourse with him. After several minutes, he asked the victim if she had any money and she gave him five dollars and some change. He then told her to get dressed and she complied. The man then got dressed and forced her to leave the apartment with him. As they walked down the steps, the victim "jumped away from his arm and ran down the steps and started banging on the door at the bottom of the steps." The man fled the scene and the victim returned to her apartment and locked the door. The victim's roommate returned home at approximately midnight and convinced her to call the police. The victim was in a "highly nervous state" with a "red eye" which, as time progressed, became black. A police officer took a description of the assailant from the victim and then transported her to City Hospital, where the examining physician found evidence of recent sexual intercourse.

Sergeant Margaret Waters was assigned to the case and was told by the victim in a telephone conversation on October 27, 1980, that while on her way to visit her dentist on October 25, she observed her assailant working in a liquor store at a nearby shopping center. On November 3, Sergeant Waters went to the liquor store and ascertained that appellant was an employee there. On November 12, she showed the victim an array of seven photographs, and from that array she positively identified appellant's photograph as being a photograph of her assailant. Earlier, on November 3, Sergeant Waters and the victim examined student photographs on file at Coppin State College but were unable to find anyone resembling the assailant. Sometime after the photo identification, the victim was riding home on a bus when she saw her assailant walking down the street.

Appellant was arrested on November 19, 1980. He and his girlfriend, with whom he lived, testified on his behalf. Appellant denied attacking the victim or that he had ever seen her prior to her appearance in court. He had been unable to reconstruct exactly where he had been on October 21, 1980, and his girlfriend had no particular recollection of his activities that day. They both testified, however, that appellant worked every day from 8:00 a.m. until 5:00 p.m., that he returned home regularly no later than 7:00 p.m., and during the time he lived with his girlfriend he never otherwise left the house for more than ten or fifteen minutes.

## I.

Maryland Code (1957, 1982 Repl. Vol.) Article 27, § 462(a) defines first degree rape as follows:

> (a) *What constitutes.* — A person is guilty of rape in the first degree if the person engages in vaginal intercourse with another person by force or threat of force against the will and without the consent of the other person and:

> (1) Employs or displays a dangerous or deadly

weapon or an article which the other person reasonably concludes is a dangerous or deadly weapon, or

(2) Inflicts suffocation, strangulation, disfigurement, or serious physical injury upon the other person or upon anyone else in the course of committing the offense; or

(3) Threatens or places the victim in fear that the victim or any person known to the victim will be imminently subjected to death, suffocation, strangulation, disfigurement, serious physical injury, or kidnapping; or

(4) The person commits the offense aided and abetted by one or more other persons.

Appellant initially contends that the evidence was insufficient to support his conviction for first degree rape. He argues that the instant case is factually similar to *Mayes v. State,* 50 Md. App. 628, 440 A.2d 1093 (1982). In *Mayes,* the defendant grabbed the victim on a public street in daylight hours, struck her in the face when she screamed, put his arm around her and dragged her about 25 feet into a wooded area where he raped her. No evidence was adduced at trial concerning the state of mind of the victim nor of any specific threats of bodily harm.

In the instant case, the victim was attacked at night in her own apartment after the assailant gained admittance by a ruse. The victim had no opportunity to escape or seek assistance. The victim was a virgin and was obviously helpless and at the mercy of the alleged rapist. The uncontradicted evidence was that she was struck in the face twice by the attacker and that additional blows were threatened if she did not accede to her attacker's wishes. The blows to the face were sufficiently severe to cause substantial bruises. The blows combined with the threats of continued assaults were, we conclude, more than enough to create an actual apprehension of serious and imminent bodily injury. The evidence was sufficient to raise a jury question as to the guilt or innocence of the appellant of the crime of first degree rape.

## IIA.

Appellant urges that the trial court erred in refusing to grant the appellant's request for a specific alibi instruction to the jury. Maryland Rule 757 b provides in pertinent part as follows:

> The court may, and at the request of any party shall, give those advisory instructions to the jury as correctly state the applicable law .... The court need not grant any requested instruction if the matter is fairly covered by the instructions actually given.

At trial, appellant's defense was that the victim had mistaken him for someone else and that he was not present at the scene of the rape and robbery. In order to establish an alibi, Jacqueline Martin, appellant's girlfriend, was called to testify. According to Ms. Martin, the appellant was living with her at the time of the crime. She testified that although she did not remember the night in question specifically, appellant never, in all the time they had lived together, left the house in the evening for more than ten to fifteen minutes. Appellant offered basically the same testimony.

The trial court gave the following instruction on alibi:

> Now, also in this case there is some testimony from the Defendant and his witness, the Defendant's witness, concerning alibi. An alibi is a legitimate, legal and proper defense. An alibi of an accused, proceeding as it does on the idea that he was elsewhere at the time of the commission of the crime does, if believed, preclude the possibility of guilt. But all the evidence of a criminal case is to be considered together and the jury may not merely weigh the evidence relating to the alibi and determine from that alone whether there is reasonable doubt of guilt. An accused is entitled to acquittal if the alibi testimony, when taken into consideration with all the other evidence in the case, raises a reasonable

doubt of guilt. The State is not obligated to disprove an alibi.

Counsel for the defendant excepted to the instruction as given and requested the trial judge to give the following additional instruction:

> The presence of the Defendant at the time and place of the criminal act is not to be presumed or assumed. In every case where the presence of the Defendant at the commission of the crime is essential to his conviction, the State must establish his presence beyond a reasonable doubt. . . .
>
> If you do not believe the Defendant's alibi but find the State has not established his presence beyond a reasonable doubt, then you must find the Defendant not guilty.

The court noted the exception but refused to give the requested additional alibi instruction. Appellant particularly complains that the court's instruction on alibi was incorrect when it instructed the jury that the "State was not obligated to disprove an alibi." We consider this language not necessarily a misstatement of the law in the light of the language which preceded it. *The State is not obligated to prove that the defendant was not where he says he was.* Rather, the State is obligated to prove beyond a reasonable doubt that the defendant was present at the scene of the crime.

The State met its burden to the satisfaction of the triers of the facts, through the testimony of the victim and the other witnesses. It is obvious from the verdict returned by the jury that it did not believe the appellant's alibi. After careful consideration of the instructions as given by the trial judge, including the reasonable doubt instruction quoted below we conclude the court fairly covered the issue in the instructions as given. *See Grady v. State,* 24 Md. App. 85, 329 A.2d 726 (1974), *aff'd,* 276 Md. 178, 345 A.2d 436 (1975).

## IIB.

Appellant next argues that the jury instruction as given on the issue of reasonable doubt was defective in that it failed to include the words "unhesitatingly" and/or "without hesitation" in the instruction as given. The trial judge gave the following instruction on reasonable doubt:

> It is incumbent upon the State to offer you proof to show the Defendant is guilty of the crime with which he is charged and the degree of proof that is necessary for the State to offer you is that it must be proof that the Defendant is guilty beyond a reasonable doubt and to a moral certainty. Each and every element of the crime charged must be proven by the State beyond a reasonable doubt and to a moral certainty. That does not mean the State must prove a person guilty to a mathematical certainty. I will undertake this explanation of reasonable doubt to you.
>
> If after a consideration of all the facts you can say that you have an abiding conviction of the Defendant's guilt such as you would be willing to act upon in an important matter relating to your own affairs then you have no reasonable doubt. Stating the same thing a little differently, the evidence is sufficient to remove a reasonable doubt when it convinces the judgment of an ordinarily prudent person of the truth of a proposition with such force that *he would act* upon the conviction in his own most important affairs. That is the degree of proof that the State must produce in a criminal case in order to justify a verdict of guilty. [Emphasis supplied].

Appellant requested that the court instruct the jury as follows:

> A reasonable doubt is a doubt based upon reason and common sense — the kind of doubt that would make a reasonable person hesitate to act. Proof

beyond a reasonable doubt must, therefore, be proof of such a convincing character that you would be willing to rely and act upon it unhesitatingly in the most important of your own affairs.

The court noted appellant's exception and refused his request for the instruction. Appellant argues that the failure to use the specific language he requested amounts to reversible error. We do not agree.

It is correct that an instruction on reasonable doubt which *included* the words "without hesitation" was approved by the Court of Appeals in *Lambert v. State,* 193 Md. 551, 69 A.2d 461 (1949). The instruction was again approved in *Montgomery v. State,* 292 Md. 84, 437 A.2d 654 (1981) and *Lansdowne v. State,* 287 Md. 232, 412 A.2d 88 (1980). But neither of these cases suggests that a failure to include the phrase "without hesitation" or "unhesitatingly" would amount to reversible error in an instruction on reasonable doubt. The Court of Appeals in *Montgomery* stated that the approved instruction is "not the only satisfactory explanation of reasonable doubt" and declined to prescribe an instruction that would apply in every case. 292 Md. at 95. As we said in *Tipton v. State,* 39 Md. App. 578, 586, 387 A.2d 628 (1978), "it is not necessary that the court give a requested instruction if the matter is fairly covered in the instruction actually given and the jury was not misled on the subject." It might be argued that the use of the words "unhesitatingly" or "without hesitation" might themselves mislead a jury into believing that any jury verdict which is the product of a prolonged deliberation rather than an instantaneous acclamation must fall under the "without hesitation" standard.

From our own independent review of the record we conclude the issue of reasonable doubt was adequately covered by the trial court in its instructions as given to the jury and it was not error to refuse the additional instruction requested.

## IIC.

Appellant requested a cautionary instruction based on Sir Matthew Hale's discussion of the crime of rape dating back to the 17th century. The appellant asked the trial judge to give the following instruction:

> It is true rape is a most detestable crime and therefore ought severely and impartially to be punished with death; but it must be remembered, that it is an accusation easily to be made and hard to be proved, and harder to be defended by the party accused tho never so innocent.

See *1 Hale History of the Pleas of the Crown* (1st American Ed. 1847) 633, 635, cited in *People v. Rincon-Pineda,* 14 Cal.3d 864, 123 Cal. Rptr. 119, 538 P.2d 247 (1975).

This particular instruction has been widely accepted and used in the past; however, in recent times it has come under increasing attack. *Burke v. State,* 624 P.2d 1240, 1255 (Alaska, 1980). Its use has been forbidden by statute in a number of jurisdictions. See *People v. Fierro,* 606 P.2d 1291 (Colo. 1980). In some states the giving of the instruction has been held to be discretionary with the trial court. *See, e.g., State v. Harwood,* 609 P.2d 1312 (Ore. App. 1980); *Beasley v. State,* 522 S.W.2d 365 (Ark. 1975). In still other jurisdictions the use of this instruction has been forbidden by case law. *See, e.g., People v. Rincon-Pineda,* 123 Cal. Rptr. 119, 538 P.2d 247 (1975); *State v. Fedderson,* 230 N.W.2d 510 (Iowa 1975); *State v. Studham,* 572 P.2d 700 (Utah 1977).

Even in those states where the instruction is considered to be mandatory its use is limited by the circumstances of the case. *See, e.g., State v. Camitsch,* 626 P.2d 1250 (Mont. 1981), where personal enmity was shown between victim and defendant and *no* corroborating evidence; *State v. Fulks,* 160 N.W.2d 418 (S.D. 1968), where conviction was based on uncorroborated testimony of complaining witness. No state considers the instruction to be mandatory in all rape cases. *See* 92 A.L.R.3d 866.

In *People v. Rincon-Pineda, supra,* the Supreme Court of California examined Lord Hale's writings on rape at length and stated the following:

> ... Sir Matthew Hale himself was convinced that the best test of the credibility of a prosecutrix was the surrounding circumstances, including any corroborating evidence, of a particular case. Moreover, Hale affirmed the "excellency" of leaving the question of credibility to the jury. It is true that Hale urged caution in rape prosecutions, but he did so in the context of three propositions: that otherwise, incompetent, infant witnesses should be allowed to address the jury, that he had personally witnessed the malicious prosecution of fabricated allegations of rape, and that rape in general aroused passions ill-suited to fair adjudication. Even if accepted at face value, we find nothing in Hale's writings to suggest that, as a matter of course, juries should be instructed that those who claim to be victims of sexual offenses are presumptively entitled to less credence than those who testify as the alleged victims of other crimes. The credibility of a witness, by Hale's lights as by ours, is to be determined by the circumstances of the alleged crime and the narration of it by the witness, and these circumstances vary markedly from case to case. 123 Cal. Rptr. at 128.

Maryland has not previously addressed itself to the issue of the propriety of the use of Lord Hale's cautionary instruction in sex offense cases. In the light of the protections now afforded to a criminal defendant as compared with those available to an accused in England three hundred years ago, we believe that a mandatory requirement that the cautionary instruction be given in every sex offense case, when requested, would, in effect, create a rule without a reason. In the absence of any enactment by the Legislature to the contrary, we hold that the giving of the instruction is discretionary with the trial judge given the facts and circum-

stances of each case. Where the issues of corroboration, malice, or consent are not generated by the evidence in a charge of sex offense against an accused, we conclude the general instruction ought not be given. In this case none of these issues were raised by the testimony in the case and therefore we find no error.

## IID.

Appellant requested an instruction that if the jury viewed the evidence as reasonably permitting either of two conclusions, innocence or guilt, the jury should adopt the conclusion of innocence. The court refused to grant the instruction on the basis that the instruction is appropriate only in those cases where the proof is entirely circumstantial. We agree. *See Glaros v. State,* 223 Md. 272, 164 A.2d 461 (1960); *Mason v. State,* 12 Md. App. 655, 280 A.2d 753 (1971). We find no error in refusing to grant the instruction.

*Judgments affirmed; costs to be*
*paid by appellant.*