468 A.2d 650

**Thomas Leslie RHOADES, Jr.**

v.

**STATE of Maryland.**

**No. 176, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

Dec. 13, 1983.

602

Louis P. Willemin, Asst. Public Defender, with whom was Alan H. Murrell, Public Defender, on the brief, for appellant.

Diane G. Goldsmith, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen., Warren B. Duckett, Jr., State's Atty. for Anne Arundel County, and Frank R. Weathersbee, Deputy State's Atty. for Anne Arundel County, on the brief, for appellee.

Submitted before WEANT, ALPERT and GETTY, JJ.

ALPERT, Judge.

During the 17th century, Sir Matthew Hale wrote extensively on the legislative and decisional evolution of the crime of rape. Lord Hale observed:

> It is true rape is a most detestable crime, and therefore ought severely and impartially to be punished with death; but it must be remembered, that it is an accusation easily to be made and hard to be proved, and harder to be defended by the party accused, tho never so innocent.

1 *Hale History of the Pleas of the Crown* (1st American Ed.1847) 633, 635. This statement served as the genesis for the "Lord Hale instruction" which cautions juries to scrutinize carefully the testimony of a prosecutrix in a sex offense case.[1]

In *Brooks v. State,* 53 Md.App. 285, 294–96, 452 A.2d 1285 (1982), *cert. denied,* 295 Md. 529 (1983), we held that the Lord Hale's instruction may be given only where the issues of corroboration, malice or consent are generated by evidence in a sex offense prosecution. We tempered this holding by stating that the matter rested within the trial judge's discretion. As there was no evidence of these three issues in *Brooks,* we found that the trial court had not erred in refusing to give the instruction.

---

1. For a further discussion of the writings of Lord Hale, see *People v. Rincon-Pineda,* 14 Cal.3d 864, 123 Cal.Rptr. 119, 538 P.2d 247 (1975).

Although Lord Hale's instruction originated nearly 300 years ago, this is only the second case in the annals of Maryland appellate jurisprudence which discusses the instruction.[2] It is the first decision where the factual issues might seem to warrant its delivery.

### Facts and Proceedings

Sometime after midnight on March 30, 1982, a woman stopped her AMC vehicle at a traffic light on Ritchie Highway. Observing three men on the median strip next to her car, the woman inquired whether anything was amiss. Unfortunately, this inquiry culminated in the woman being the victim of a gang rape.

According to the victim, the three men entered her car without permission via the passenger door and ordered her to drive to a specific location where she was dragged out of her automobile, stripped of her clothing and raped by each man. The victim's resistance during the attack caused one of the men to strike her in the face, resulting in a broken nose. After she was permitted to clothe herself, the victim and the three men reentered her car and drove back towards Ritchie Highway. While en route, the victim feigned illness and was ousted from the car. The men then proceeded with her car.

The rape victim ran to a nearby house where Danny Guy resided. Guy testified that the victim arrived at his house crying and appeared to be scared. She told him she had been raped. Guy notified the authorities and Officer Gray was dispatched to investigate. After interviewing the victim, Gray broadcast an announcement on his radio for police to be on the lookout for the victim's stolen car. He then transported her to a hospital.

Dr. Gabriel DeCandido treated the victim and testified that she had suffered a fractured nasal bone, facial cuts and

---

2. However, there is no paucity of appellate decisions in other jurisdictions on this issue. For a complete survey and discussion, see, Annot., 92 A.L.R.3d 866 (1979).

bruises, bruises on her neck, and red marks on her chest. A pelvic examination disclosed no vaginal rips but some tenderness and semen was present.

Meanwhile, at approximately 4:30 a.m., Officer Earl Fox espied a car matching the description of the victim's AMC car. That vehicle was being followed closely by a white Pontiac. Fox pursued the AMC car, stopped it after a high speed chase and arrested the driver, Thomas Leslie Rhoades, Jr., appellant. Shortly thereafter, the Pontiac was stopped and its two occupants, Richard Hubbard and William Houseman, were arrested. When interviewed by Detective Thrift at 9:40 a.m., appellant denied knowing the rape victim and claimed he had not been with any women that evening.

At his trial, appellant denied making any statement to Detective Thrift and provided a different account of his experience with the victim. He testified that the three men were walking on the median strip to retrieve a tape cassette thrown out the window of Hubbard's car. Appellant saw the victim waiting at the traffic light and asked her for a cigarette. He stated that the woman invited the men to enter her car and join her at a nearby party. Appellant asserted that instead of driving to the party, the woman stopped the car on a dirt road and requested that appellant take a walk with her. During this walk, appellant maintained that the victim's consensually engaged in sexual intercourse with each man. Afterwards, all four returned to the victim's car with appellant assuming the driving responsibilities at her request. While driving, in response to a remark made by appellant, the victim and appellant exchanged blows resulting in the woman's facial injuries. The victim needed to make a telephone call so appellant stopped the car. When she did not return, the men continued driving in order to pick up Hubbard's Pontiac. Hubbard and Houseman followed appellant in the AMC car as the men desired to return the woman's car. They were interrupted, however, when Officer Fox observed the stolen AMC. Appellant explained his attempt to avoid Fox was motivated by panic, because he knew he had struck the victim.

Appellant was convicted by a jury in the Circuit Court for Anne Arundel County (Thieme, J., presiding) of first degree rape, first degree sexual offense, kidnapping, theft, and conspiracy to commit first degree rape. He was sentenced to eighteen months for the theft conviction and twenty-five years for each remaining count, all sentences to run concurrently.

On appeal, appellant raises two issues for our consideration.

I. Did the trial court err in refusing to instruct the jury as requested by Appellant?

II. Was the evidence insufficient to sustain Appellant's conviction of conspiracy?

We conclude the answer to both questions is "no" and shall therefore affirm each of appellant's convictions.

I. *Lord Hale's instruction*

At the conclusion of the court's charge to the jury, appellant excepted to the trial judge's failure to give the Lord Hale instruction.

MR. FRIEDMAN: The only exception I would take is the failure of the court to instruct the jury that . . . in the language of the jury instruction regarding (unintelligible). Rape is a difficult . . . is an easy crime to allege and a difficult one to prove where the only witnesses are the victim alleged and the defendant and that the jury should weigh that evidence very carefully and the basis of the exception would be as to the crime, itself. There is only the victim alleged and the defendant and the inability of the defense to compel the testimony of the other two individuals who were present at the scene. The other evidence that the State has adduced would be merely corroborative evidence and not eyewitness, direct evidence as to that scene of the crime.

COURT: The court will make no further instruction. Is that the only thing?

MR. FRIEDMAN: That's all.

Appellant contends that our decision in *Brooks* mandated the Lord Hale instruction in this case because:

(a) the issue of consent was generated and

(b) there was inadequate corroboration of the victim's testimony.

(a)

■ Even assuming that the issue of consent was raised below, appellant overlooks our caveat in *Brooks* that the decision to give the Lord Hale instruction is still within the trial court's discretion. *Id.* 53 Md.App. at 295–96, 452 A.2d 1285. Furthermore, we note that in other jurisdictions where the instruction is considered discretionary, it has been held that the instruction is properly refused where corroborating evidence is present.

In *State v. Mackie,* 622 P.2d 673 (Mont.1981), a rape victim testified she accepted a ride with the defendant expecting to be driven to a coffee shop to discuss personal problems the defendant was experiencing with his girlfriend, the victim's roommate. Rather than drive to the coffee shop, the accused drove to an isolated area and, after the victim resisted his advances, raped her. The defendant insisted that he and the victim had consentually engaged in sexual intercourse in the victim's apartment. The Supreme Court of Montana affirmed the conviction holding that the Lord Hale instruction was properly refused by the trial court.

[T]he instruction . . . is applicable only if the evidence presented at trial shows: (1) personal enmity existed between the victim and the defendant, and (2) corroborating evidence of the victim's account of the rape incident does not exist. * * * No evidence of manifest malice or motive for revenge between the victim and the defendant was presented during the trial. Further, a good deal of corroborating evidence was presented during the trial, including the testimony of the victim's friends and the

physical evidence of the victim's injury. The instruction was properly refused.

*Id.* at 676.

■ The record in the case *sub judice* is devoid of any evidence of pre-existing malice or motive for revenge by the victim. Additionally, there was overwhelming corroborative evidence demonstrating that the victim did not consent to the sexual assault. Guy described the victim's physical appearance and mental state when she approached his house shortly after the incident. He described the red marks, bruises and abrasions on the woman's face as well as the blood on her nose. Dr. DeCandido's subsequent examination revealed "facial abrasions and hematomas, a tender nose with some bleeding from the nose, bruises on the neck, many red marks on her chests, . . . in the front part of her body and on her back." He also found evidence of semen in her vaginal cavity.

■ Given the evidence adduced at appellant's trial, we are unable to state that the mere raising of a consent defense justified the giving of the Lord Hale instruction. The trial court's failure to so instruct was not an abuse of discretion.

### (b)

Appellant's argument on inadequate corroboration is based on the fact that two other persons with direct knowledge of the facts (Hubbard and Houseman) were unable to testify. Thus, appellant seems to posit that in these eyewitnesses' absence, the physical corroboration presented in the case was insufficient to deny a Lord Hale instruction. We disagree.

In *United States v. Merrival,* 600 F.2d 717 (8th Cir.1979), the victim left a party with two men to purchase additional alcoholic refreshments. While travelling in a car, the victim was raped by both men. The victim escaped her assailants

and walked to a hospital. An examination revealed a secretion of a male prostate gland in the victim's vagina and mouth. Hair samples and pubic hairs were also analyzed. The United States Court of Appeals for the Eighth Circuit held that the Lord Hale instruction was properly refused because this victim's testimony was amply corroborated. Testimony was presented regarding the chemical testing, abrasions and scratches on the victim's head and stomach, her demeanor and the disarray of her clothing when she arrived at the hospital. Circumstantial evidence of the rapists' identity has been provided through the testimony of defense witnesses who had seen the victim leave the party with the defendant.

The issue of sufficient corroboration is further explicated in the factually analogous case of *Kennedy v. State,* 470 P.2d 372 (Wyo.1970), *cert. denied,* 401 U.S. 939, 91 S.Ct. 933, 28 L.Ed.2d 218 (1971). There, a woman was raped by three men. Appellant's argument on appeal was that the sexual intercourse was consensual, that the victim's version was uncorroborated, and that the trial court had erred by refusing his request for a Lord Hale instruction. The Supreme Court of Wyoming affirmed appellant's conviction.

It is true there were no eyewitnesses who could be expected to corroborate all of the testimony of the complaining witness, but her testimony was corroborated by the testimony of the doctor and by witnesses who heard her complaints and saw her bruises and torn clothes—and also by defendant's admission that he had intercourse.

Aside from the defendant, who is appellant in our court, and the complaining witness, there were two male companions with this defendant. They were also charged with acts of rape. While they could hardly be expected to corroborate the victim's story, they were nevertheless eyewitnesses. *Thus, this case is unlike those cases contemplated in the proffered instruction, where testimony on the part of the complaining witness is uncorroborated*

*and where only the complaining witness and defendant are witnesses to the act.*

*Id.* at 374 (emphasis added).

The clear import of *Kennedy* is that the Lord Hale instruction is inappropriate where there are witnesses other than the victim and the defendant and there is other corroborating evidence. In other words, the Lord Hale instruction could only have been applicable in cases where the only witnesses were the two participants and there is no other evidence corroborating the complaining witness.

 Moreover, we note that our inclusion in *Brooks* of corroboration as one of the elements which might permit the Lord Hale instruction conflicts with a concept firmly entrenched in Maryland law, *i.e.,* that a rape victim's testimony need *not* be corroborated to sustain a conviction. *E.g., Green v. State,* 243 Md. 75, 80, 220 A.2d 131 (1966); *Doyal v. State,* 226 Md. 31, 34, 171 A.2d 470 (1961); *Moore v. State,* 23 Md.App. 540, 551, 329 A.2d 48 (1974); *Lucas v. State,* 2 Md.App. 590, 593, 235 A.2d 780 (1967). Therefore, we hold that the generation of a genuine issue of lack of corroboration alone, absent evidence of the victim's consent or the victim's malice towards the accused, does *not* permit a trial judge to give the Lord Hale instruction. Even where the issues of malice or consent are generated, the giving of the instruction remains discretionary with the trial judge.

The State requests that we further reconsider our decision in *Brooks* and hold that the Lord Hale instruction should be prohibited. Its brief cites statutes and precedent from other jurisdictions which have expressly forbidden its use. Rationales for discontinuing the use of the instruction include arguments that the instruction: (1) impermissibly directs the jury's evaluation of the evidence, *State v. Studham,* 572 P.2d 700, 702 (Utah 1977); (2) applies a stricter test of credibility to a rape victim than to victims of other crimes, *People v. Rincon-Pineda, supra,* 538 P.2d at 260; and (3) accords the trial courts indiscriminate right to give or refuse to give the instruction, *State v. Feddersen,* 230 N.W.2d 510,

515 (Iowa 1975). The following passage by the Supreme Court of California sets out a most convincing reason for prohibiting Maryland courts' future use of the Lord Hale instruction:

> Whatever might have been its historical significance, the disapproved instruction now performs no just function, since criminal charges involving sexual conduct are no more easily made or harder to defend against than many other classes of charges, and those who make such accusations should be deemed no more suspect in credibility than any other class of complainants. When such prosecutions present close evidentiary questions, they do so not because a victim—generally a woman—claims to have been sexually assaulted or abused, but because the alleged crime took place in evanescent circumstances difficult to reconstruct in court, a happenstance which may plague prosecution of any crime involving specific intent, and which is indeed a typical occurrence in such non-sexual crimes as fraud and narcotics transactions. A cautionary instruction bred in the circumstances of 17th century criminal rape and criminal justice need not be disinterred in a contemporary California courtroom in order to insure that a defendant faced essentially by a single accuser will not be casually convicted without due consideration of the relative weight of the evidence.

*People v. Rincon-Pineda, supra, id.*

Nevertheless, we are mindful that the "declaration of public policy of Maryland is normally the function of the General Assembly. *Harrison v. Montgomery Co. Bd. of Educ.*, 295 Md. 442, 460, 456 A.2d 894 (1983). It is important to note that the General Assembly has considered eleven bills in the past seven years which would prohibit use of the Lord Hale instruction.[3] None became law. While this is not

---

3. H.B. 2064 and S.B. 1040 (1976); H.B. 741 and S.B. 426 (1977); H.B. 254 and S.B. 165 (1978); H.B. 999 and S.B. 551 (1979); H.B. 838 and S.B. 434 (1980); and S.B. 51 (1982).

conclusive, we believe it indicative of the legislature's intent to retain the use of the Lord Hale instruction under the proper factual circumstances.

II. *Sufficiency of Evidence to Sustain Conspiracy Conviction*

Criminal conspiracy requires a combination of two or more persons, who by some concerted action seek to accomplish some criminal act or unlawful purpose; or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means. *Gardner v. State,* 286 Md. 520, 523, 408 A.2d 1317 (1979). To sustain a conspiracy conviction, the combination to commit the crime must have been formed prior to the commission of the criminal act. *Beard v. State,* 42 Md.App. 276, 285, 399 A.2d 1383 (1979). Appellant submits that there was no evidence that he and his companions schemed and planned to commit this crime.

The State is not required to show a formal agreement in order to make out its case. All it must present are facts which allow the fact finder to infer that the parties tacitly agreed to commit an unlawful act. *Silbert v. State,* 12 Md.App. 516, 528, 280 A.2d 55, *cert. denied,* 263 Md. 720 (1971).

The evidence indicated that appellant and his confederates forced their way into the victim's car, compelled her to drive to a secluded area and raped her. Applying the familiar standard espoused in *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), we believe that a jury, as a rational trier of fact, could find that appellant and his consorts had at least tacitly agreed to commit a first degree rape (gang rape) prior to their entry into the victim's vehicle.

JUDGMENTS AFFIRMED; APPELLANT TO PAY THE COSTS.