499 A.2d 200

**Gregory Leon BATTLE**

v.

**STATE of Maryland.**

**No. 51, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Nov. 6, 1985.

Certiorari Denied Jan. 30, 1986.

40

Barbara L. Matthews, Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Nicolette H. Prevost, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Baltimore, Andrew L. Sonner, State's Atty. for Montgomery County and Robert L. Dean, Asst. State's Atty. for Montgomery County, on brief, Rockville), for appellee.

Argued Before ALPERT and ROBERT M. BELL, JJ., and JAMES S. GETTY, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

ALPERT, Judge.

Gregory Leon Battle, appellant, was convicted of a variety of offenses arising out of two simultaneous armed robberies. He believes that those convictions were legally unjustified and appeals. We disagree and shall affirm.

## FACTS

On January 16, 1984, employees of two separate stores (Bernard's Menswear and Thom McAn's Shoe Store) in the same shopping mall (White Oak Shopping Center in Montgomery County) were robbed. Both robberies occurred at 7:30 p.m. The testimony of various eyewitnesses, including the robbery victims and police involved in the arrest of appellant Battle and his co-defendants, map out the following series of events surrounding the robberies.

At 7:30 a single black man, ("Tan") wearing a tan jacket and tan hat went into Thom McAn's Shoe Store. When the store clerk approached him from behind the sales counter, Tan pulled out a handgun and instructed the clerk to put all the money in a bag, which he did, and then Tan walked out of the store in the direction of a liquor store at one end of the mall.

At the same time as the robbery was "going down" in Thom McAn's, another single black "customer," this one wearing a black hat and black jacket ("Black") entered Bernard's Menswear. After a store clerk helped Black to pick out a jacket from the store racks, and was going to the counter to ring up the sale, Black displayed something

which resembled a gun to the clerk and his manager, who had been on the phone. Here, too, the employees were ordered to give Black the cash from the register, as well as their own wallets. Then Black walked out of the store in the direction of the liquor store where Tan committed a robbery.

Tan and Black exited the mall within a minute of each other, heading in the same direction in the parking lot. A police officer on stakeout saw Black get into the backseat of a black Buick on the passenger side. Having heard reports of the robberies from other police officers on duty at the shopping center, he followed the Buick, which did not have its headlights on, as it left the parking lot. The Buick was stopped at a police roadblock nearby, and the three occupants were arrested.

The occupants were: Robinson, the driver, who was wearing a black jacket; Jones, in the front passenger seat, who was wearing a tan jacket; appellant, Battle, in the rear seat, wearing a black jacket. After apprehending the three occupants, the following items were removed from appellant's immediate possession: a billfold belonging to the manager of Bernard's Menswear, handcuff keys, and a revolver. In addition, an automatic handgun, a Thom McAn bag containing money, a box of handcuffs, several items of men's clothing from Bernard's Menswear, and the black and tan hats were found in the passenger compartment. Both the revolver and the automatic handgun were tested and determined to be operational. There was conflicting testimony at trial concerning the gun used by Black in the Bernard's robbery. The manager testified it resembled the revolver found on appellant, while the store clerk said it resembled neither of the guns seized, and in fact didn't look like a real gun.

On February 2, 1984, appellant was indicted for three counts of robbery with a dangerous and deadly weapon, three counts of use of a handgun, one count of conspiracy to commit robbery, and two counts of transporting a hand-

gun by vehicle. The State's motion to consolidate appellant's case with Robinson and Jones was granted. Appellant's and his co-defendants' motion to suppress evidence seized during the arrest was denied, as were their motions for continuance and severance.

The case was tried before a jury in the Circuit Court for Montgomery County, Miller, J., presiding. On July 17, appellant was found guilty of two counts of robbery with a dangerous and deadly weapon, two counts of use of a handgun, conspiracy to commit robbery, and one count of transporting a handgun by vehicle.

On December 19, appellant was sentenced to twelve years for the first count of robbery with a dangerous and deadly weapon, and received an additional sentence for each of the remaining convictions, all to run concurrently with the first twelve-year sentence. An appeal to this court was timely filed.

The appellant presents five issues for consideration:

1. Did the trial court err in refusing to instruct the jury on the lesser included offense of robbery?

2. Was evidence that appellant had a handgun in his pocket sufficient to sustain a conviction for knowingly transporting a handgun in a vehicle?

3. Was the evidence sufficient to sustain two convictions for use of a handgun during the commission of a crime of violence where there were two victims but only one criminal episode?

4. Was the evidence sufficient to identify appellant as the perpetrator of the armed robberies in Bernard's Menswear store?

5. Did the trial court err in permitting a joint trial of appellant, Robinson and Jones?

### 1.

In its instructions to the jury on the counts of robbery with a dangerous or deadly weapon, the trial court stated:

Now, robbery with a dangerous or deadly weapon consists of the crime of robbery coupled with the use of a weapon to produce intimidation and coupled with the apparent ability to use the weapon. In order for the defendant to be found guilty of this offense, the State must prove beyond a reasonable doubt, number one, that there was a robbery, and number two, that it was committed with the use of a deadly or dangerous weapon.

Appellant Battle excepted to this instruction, arguing that the jury could find him guilty of the "lesser-included" count of robbery, if they find that there was no deadly weapon. The court noted that, because the jury must, without the appellant's requested instruction, find defendant guilty of robbery *and* using a dangerous or deadly weapon, or find him not guilty, it was really advantageous to defendant to deny the instruction for simple robbery.

The State contends that, because appellant was charged with robbery with a dangerous and deadly weapon, and not simple robbery, he could not have been convicted of robbery, and the proffered instruction on robbery was properly denied. We agree that the trial judge did not err, but not quite for the reasons assigned by the State.[1]

Appellant contends that because the witness Worrell thought that the gun was a toy gun, the jury could find that Worrell was robbed, but not with a dangerous or deadly weapon. We hasten to point out that the jury, if it found that Worrell was robbed, but not with a dangerous or

---

1. We disagree with appellee's assertion that "in the absence of a charging document charging robbery, appellant could not have been convicted of robbery and sentenced to the less severe penalty." Because robbery with a dangerous or deadly weapon "is not separate and distinct from [common law] robbery, but is the same crime aggravated by the use of a dangerous or deadly weapon," Gilbert & Moylan, *Maryland Criminal Law: Practice & Procedure* § 12.5 (1983); *Darby v. State,* 3 Md.App. 407, 412–14, 239 A.2d 584 (1968), an accused may be convicted of common law robbery although he was charged only with "armed robbery" under appropriate factual circumstances. *See also Ayre v. State,* 21 Md.App. 61, 318 A.2d 828 (1973).

deadly weapon, was obliged, under the instructions, to acquit the appellant.

Alternatively, we observe that even if the gun was a toy gun, "guilt under the Maryland statute is predicated upon a finding of intent to rob by means of *intimidation* produced by use of a weapon, coupled with the *apparent* ability to execute the implied threat to use the weapon if resistance is offered...." *Jackson v. State,* 231 Md. 591, 594, 191 A.2d 432 (1962) (emphasis in original). *See also Whack v. State,* 288 Md. 137, 416 A.2d 265 (1980). As long as there is an intent to rob by means of what appears to be a dangerous weapon which is used to induce intimidation, "it is unnecessary to find an intent or ability to execute the implied threat in the event of resistance." *Jackson,* 231 Md. at 594, 191 A.2d 432.

Thus, there is no evidence of robbery *without* the use of a dangerous weapon.[2] The trial judge was not obliged to instruct the jury as to a lesser included offense "unless there is some evidence tending to reduce the crime to one of lower grades or degrees...." *Warren v. State,* 29 Md. App. 560, 564, 350 A.2d 173 *cert. denied,* 278 Md. 738 (1976). The trial judge did not err in refusing to instruct on common law robbery.

### 2.

Appellant's next contention is that the evidence that he had a handgun in his pocket was insufficient to convict him of the charge: "knowingly transporting a handgun ... in a vehicle traveling upon ways generally used by the public in this state."

Appellant offers the following rationale in support of his contention. First, he argues, Maryland Code Ann., Art. 27,

---

**2.** Here there clearly was the intent to rob with what appeared to be a dangerous weapon. As Worrell said on redirect examination when asked why he thought the gun looked like a toy:

> Well, it was ... a small gun. It looked to me to have a thin barrel to it. Kind of a thin barrel. I didn't believe it looked real, but I wasn't going to question it.

§ 36B(b) provides three alternative ways by which a person can commit the offense.[3]  He can (1) wear a handgun in any vehicle, (2) carry it in any vehicle, or (3) knowingly transport it in any vehicle.  The legislature did not define the terms "wear, carry, or transport."  Nor has this court or the Court of Appeals interpreted these terms.

Second, he claims the prohibitions against (1) wearing and (2) carrying refer to those situations where the handgun is actually on the person.  "Wearing" and "carrying" are thus distinguished from "knowingly transporting," which refers to situations where the handgun is not on the person, but rather is somewhere in the vehicle itself, for example, in the glove compartment.  This distinction is further supported, according to appellant, because the transporting must be *knowingly*, while the "wearing" or "carrying" need not.

In essence, therefore, because the State's proof showed that appellant was "wearing" a handgun in the vehicle, but was not "knowingly transporting" a handgun in that vehicle, appellant contends that there was a variance between the facts alleged and the facts proved, and thus appellant was not on notice of the particular offense he was called to defend.  *See Williams v. State*, 302 Md. 787, 490 A.2d 1277 (1985); *Brown v. State*, 44 Md.App. 71, 410 A.2d 17 (1979) (a criminal charge must so characterize the crime and discuss the particular offense so as to give the accused notice of what he is called to defend).

An examination of the statutory language supports a conclusion that the facts proven were consistent with the allegations;  therefore, the convictions on this count should be affirmed.

Where the statutory provisions are unambiguous, no construction is required, so that a plainly worded statute must be construed without forced or subtle interpreta-

---

**3.**  The statute, as written, in pertinent part provides: "[A]ny person who shall wear, carry or knowingly transport any handgun, whether concealed or open, in any vehicle traveling upon the public roads, ... shall be guilty of a misdemeanor."

tions designed to extend or limit the scope of its operation. But where a statute is plainly susceptible of more than one meaning, construction is required; in such circumstances, courts may consider not only the literal or usual meaning of words, but their meaning and effect in light of the setting, the objectives and purpose of the enactment.

*State v. Intercontinental, Limited,* 302 Md. 132, 137, 486 A.2d 174 (1985) (citations omitted).

■ Both parties on appeal argue that the meaning of "knowingly transport" is ambiguous. The State, therefore, requests this court to consider the language of the statute in light of the legislative policy behind it. Although the preamble of § 36B forms no part of the statute, we may look to it for assistance in construction. *Dillon v. State,* 277 Md. 571, 583, 357 A.2d 360 (1976). Maryland Code Ann., Art. 27, § 36B (1982 repl. vol.) states:

(a) *Declaration of policy.*—The General Assembly of Maryland hereby finds and declares that:

(i) There has, in recent years, been an alarming increase in the number of violent crimes perpetrated in Maryland, and a high percentage of those crimes involve the use of handguns;

(ii) The result has been a substantial increase in the number of persons killed or injured which is *traceable,* in large part, *to the carrying of handguns on the streets and public ways* by persons inclined to use them in criminal activity;

(iii) The laws currently in force have not been effective in curbing the more frequent use of handguns in perpetrating crime; and

(iv) *Further regulations on the wearing, carrying and transporting of handguns are necessary* to preserve the peace and tranquility of the State and to protect the rights and liberties of its citizens.

(emphasis added).

The intent of this statute is clear: to curtail the movement of handguns, whether they be "carried" [4] on a person or in a vehicle. This declaration of policy only restates what a careful reading of Art. 27, § 36B(b) reveals. That subsection states in pertinent part:

*Unlawful wearing, carrying, or transporting of handguns; penalties.*—Any person who shall wear, carry, or transport any handgun, whether concealed or open, *upon or about his person,* and any person who shall wear, carry or knowingly transport any handgun, whether concealed or open, *in any vehicle traveling upon the public roads, highways, waterways, or airways or upon roads or parking lots generally used by the public in this State* shall be guilty of a misdemeanor; and it shall be a rebuttable presumption that the person is knowingly transporting the handgun....

(emphasis added).

Clearly, the legislature is concerned with methods of moving handguns: *upon or about [a] person* and *in any vehicle traveling upon the public roads, highways ... generally used by the public.* See *Broadway v. State,* 23 Md.App. 68, 79, 326 A.2d 212 (1974), *cert. denied,* 273 Md. 719 (1975).

■ The appellant was charged, in essence, with moving a handgun in a vehicle. The plain and simple facts demonstrated that he was in possession of a handgun while moving in a vehicle on a public way—behavior that is clearly proscribed by the statute. The trial court was correct in finding the evidence sufficient on this count.[5]

---

**4.** Webster's Unabridged Dictionary, 3rd ed., defines "carry" as deriving from the French "carier" meaning "to transport in a vehicle." Other definitions are "to hold, wear, or have upon one's person."

**5.** The statute expressly creates a rebuttable presumption that the person wearing, carrying or transporting, is "knowingly transporting the handgun." We may infer from this language that evidence of carrying or wearing the handgun, as was shown at trial, is sufficient to sustain a charge of "knowingly transporting in a vehicle." See Art. 27, § 36B(b) (1982 and Cum.Supp.1985).

### 3.

█ Appellant claims that the evidence was insufficient to sustain two convictions and sentences for the use of one handgun against two victims where there was only one criminal episode. The question we must address, however, is not whether the evidence permits the conviction, but rather whether the law will.

The two counts of use of a handgun in violation of Art. 27 § 36B(d) [6] arose out of the singular criminal episode in Bernard's Menswear. The facts indicate that two store employees, Adler and Worrell, were robbed with the use of a handgun. Appellant was charged with and convicted of two counts of armed robbery. Because there were two crimes of violence, the trial court properly instructed the jury in two counts of use of a handgun.

Appellant bases his argument on three cases, *Manigault v. State*, 61 Md.App. 271, 486 A.2d 240 (1985), *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), and *Johnson v. State*, 56 Md.App. 205, 467 A.2d 544 (1983). In *Manigault* the appellant approached two persons with a drawn handgun. After the victims fled in opposite directions, appellant Manigault pursued one of them, shooting him several times. Part of Manigault's appeal concerned his conviction of two counts of possession of a handgun and two counts of use of a handgun to commit a crime of violence.

In discussing the multiple convictions for possession, Judge Moylan stated:

A single criminal episode may, of course, give rise to a number of separate criminal charges, some of which may be multiplied but some of which may not. *The key is to identify the unit of prosecution.* Both an aggravated assault ... and a simple assault ... may properly be

---

**6.** *"Unlawful use of handgun ... in commission of crime; penalties.* —Any person who shall use a handgun ... in the commission of any felony or any crime of violence ... shall be guilty of a separate misdemeanor...."

> multiplied when there are multiple victims. The unit of
> prosecution is the victim. *With respect to the use of a*
> *handgun to perpetrate a crime of violence ... the unit*
> *of prosecution is the crime of violence. Assuming that*
> *the other elements have been proved, two victims imply*
> *two crimes of violence. That, in turn, implies two*
> *separate crimes of using a handgun to commit a crime*
> *of violence.*

61 Md.App. at 279, 486 A.2d 240 (emphasis added). Because
the charges for the underlying crimes of violence in that
case resulted in judgments of acquittal, appellant contends
that the italicized language quoted from *Manigault* is only
dictum and thus not controlling here. Instead, appellant
submits that the "unit of prosecution" for the crime "use of
a handgun during the commission of a crime of violence" is
the criminal episode or transaction, not the crime of vio-
lence. We disagree.

In *Newton v. State,* 31 Md.App. 344, 356 A.2d 274 (1976),
*rev'd on other grounds,* 280 Md. 260, 373 A.2d 262 (1977),
the defendant was charged with attempted robbery and
felony murder of a cab driver, and with two counts of use
of a handgun in a crime of violence—one for each underly-
ing crime. In affirming, this court stated, "Since the
crimes of murder and robbery do not merge, we see no
logical or rational reason why the handgun convictions
underlying these separate offenses should somehow
merge." 31 Md.App. at 349, 356 A.2d 274. Although the
Court of Appeals subsequently reversed, holding that the
underlying crimes of violence did merge, *Newton v. State,*
280 Md. 260, 373 A.2d 262 (1977), that part of this court's
holding—that handgun convictions underlying separate of-
fenses do not merge—was not affected.

In order for us properly to affirm the convictions in the
handgun counts in the case *sub judice,* we need only find
sufficient evidence that there were two separate underlying
crimes of violence, and that a handgun was used in each.
That both of the underlying crimes evolved from one act of

the appellant—the use of the handgun—does not preclude such a finding.

In *Jackson v. State,* 63 Md.App. 159, 492 A.2d 351 (1985), we held that firing one shotgun blast at a car containing two persons would support a conviction and sentencing for two counts of assault with intent to murder, provided the requisite elements of assailant's intent and the victim's reasonable apprehension were shown. Citing *Harris v. State,* 42 Md.App. 248, 400 A.2d 6, *rev'd on other grounds sub nom. Countess v. State,* 286 Md. 444, 408 A.2d 1302 (1979), we reiterated that " 'assaults against multiple victims arising out of the same criminal incident are separate and distinct crimes.' " *Jackson,* 63 Md.App. at 158, 492 A.2d 351 (emphasis in original).

The facts in the instant case are analogous. Here there was one criminal episode—the use of the handgun in the robbery of the two employees at Bernard's. But there were convictions for two crimes of violence, proper in light of *Jackson.* The holding in *Newton* thus requires that we adopt Judge Moylan's dictum in *Manigault.*

The other two cases cited on this issue are inapplicable. *Bell v. United States,* 349 U.S. 81, 75 S.Ct. 620, cited in support of appellant's request that we apply the Rule of Lenity in light of asserted ambiguities in Art. 27 § 36B(d), is not applicable. First, there was no multiple punishment, because concurrent, rather than consecutive penalties, were imposed. *Contra Johnson v. State,* 56 Md.App. 205, 467 A.2d 544 (1983). Furthermore, the legislative intent in subsection (d) is not ambiguous, as indicated in *Newton* and *Manigault*—the unit of prosecution is the underlying crime of violence.

*Johnson v. State,* 56 Md.App. 205, 467 A.2d 544, also cited by appellant, is not controlling as it is distinguishable on two grounds. First, the issue there was whether use of a single handgun against a *single victim* in a single transaction, albeit encompassing two distinct felonies, supported a conviction of two handgun counts. Second, the two

handgun convictions resulted in *consecutive,* not concurrent, sentences.

Because there was sufficient evidence to support the convictions of the two underlying robberies, we must affirm the two handgun convictions.

### 4.

Appellant next asks that we reverse on the grounds that the evidence at trial was insufficient (1) to identify him as the man who robbed Worrell and Adler at gunpoint, and (2) to show he had conspired with the co-defendants, Jones and Robinson, to commit the robberies.

■ In reviewing whether the evidence was sufficient to support a criminal conviction, the standard to apply is not whether we believe the record evidence could support a finding of guilt beyond a reasonable doubt; rather, it is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Tichnell v. State,* 287 Md. 695, 717, 415 A.2d 830 (1980) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original)). This includes evidence from which proper inferences can be drawn to find the defendant guilty. *Butz v. State,* 221 Md. 68, 76, 156 A.2d 423 (1959).

■ The evidentiary facts which appellant cites as being insufficient are those weighed in a light favorable to the defense, and thus we need not consider them here. If we view the evidence in a light most favorable to the prosecution, however, the following facts are properly inferable. First, Adler, one of appellant's victims, identified his assailant as wearing a black jacket on the night in question, having a thin mustache, and holding a gun. Second, two police officers saw a man in a black jacket, matching appellant's description, leave Bernard's Menswear shortly after 7:30 p.m. and get into the right rear seat of a Buick. Third, the same two police officers followed the Buick until it was apprehended a mile or two later. They could see that

the Buick had only three occupants who remained in their original seats until apprehended. Fourth, appellant was seated in the right rear seat of the Buick when it was apprehended. Fifth, a search of appellant's person upon arrest revealed a handgun and a wallet identified as Adler's. Sixth, appellant had a thin mustache at trial, and was indicated as the man identified by Adler at the show-up identification shortly after the robbery.

From this evidence, we think any rational trier of fact could have found the essential elements of robbery and handgun offenses.

■ Appellant further claims that the evidence—that robberies occurred in two stores in the same shopping center and that appellant was found in the Buick with one of the other persons, Jones, who had robbed Thom McAn's earlier—is insufficient to sustain the conspiracy conviction. Again, appellant has failed to view the evidence in a light favorable to the prosecution, which would indicate several facts pointing toward a conspiracy. First, the two robberies were nearly simultaneous, beginning and ending within minutes and feet of each other. Second, both robbers were seen heading to the same area of the shopping center parking area. Third, immediately after appellant entered the Buick, it drove off without its lights on. Fourth, both of the robbers were identified as being passengers in the Buick. Finally, the contraband from both robberies was found in the Buick after arrest.

As to the sufficiency of evidence necessary to sustain a conspiracy conviction, the law is settled. We recently stated in *Rhoades v. State,* 56 Md.App. 601, 468 A.2d 650 (1983):

> Criminal conspiracy requires a combination of two or more persons, who by some concerted action seek to accomplish some criminal act or unlawful purpose; or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means. *Gardner v. State,* 286 Md. 520, 523, 408 A.2d 1317 (1979). To sustain a conspiracy conviction, the combination to commit the

crime must have been formed prior to the commission of the criminal act. *Beard v. State,* 42 Md.App. 276, 285, 399 A.2d 1383 (1979).

. . . . .

The State is not required to show a formal agreement in order to make out its case. All it must present are facts which allow the fact finder to infer that the parties tacitly agreed to commit an unlawful act. *Silbert v. State,* 12 Md.App. 516, 528, 280 A.2d 55, *cert. denied,* 263 Md. 720 (1971).

*Rhoades,* 56 Md.App. at 612, 468 A.2d 650.

The facts set out above are sufficient to allow an inference of this tacit agreement and to sustain the conviction on this count.

### 5.

Finally, appellant asks that we reverse on the grounds that the trial judge wrongfully denied appellant's motion for severance. We disagree.

█ In arguing for a severance at the motion hearing, appellant cited this Court's decision in *Erman v. State,* 49 Md.App. 605, 434 A.2d 1030 (1981). In *Erman,* we held that "whether to allow a severance of defendants for trial lies in the sound discretion of the trial judge." *Id.* at 612, 434 A.2d 1030. Severance should be granted, however, if it appears that defendant will be prejudiced by evidence of other crimes such that he will be prevented from receiving a fair trial. *Id.* at 614, 434 A.2d 1030. In ruling on a motion for severance, therefore, the trial judge must balance "the need to avoid prejudice to the defendant against the need to promote economy and efficiency in the administration of justice." *State v. Jones,* 284 Md. 232, 238, 395 A.2d 1182 (1979); *Johnson v. State,* 38 Md.App. 306, 310, 381 A.2d 303 (1977).

In *Johnson,* this court reaffirmed the general rule that "where the evidence necessary to convict one of the [defendants] was the same evidence required to convict all of

them," severance is improper. 38 Md.App. at 311, 381 A.2d 303 (citing *McCree v. State*, 33 Md.App. 82, 92–93, 363 A.2d 647 (1976)). As the State correctly notes in its brief, the facts already enumerated demonstrate that all of the crimes, with the exception of the separate armed robberies, involved the same three defendants, such that separate trials would require the same evidence to be introduced three separate times. Here, except for the employees of the two stores, all the witnesses are the same, all of the real evidence seized is the same. Thus, the interests of judicial economy weigh heavily in favor of consolidation.

■ Therefore, there would be an abuse of discretion, only if appellant demonstrated prejudice by introduction of evidence of the other crimes; namely, the robbery of Thom McAn's. It is well settled in Maryland that "evidence of other crimes can be introduced under the common scheme exception," *i.e.*, the evidence is mutually admissible, "only when the relationship between the time, place, circumstances or parties involved in the crimes is such that the uncharged crime or crimes ... support the inference that there exists a single inseparable plan." *State v. Jones*, 284 Md. at 236, 395 A.2d 1182. There must be a causal relation or logical or natural connection among the various acts, or they must form part of a continuing transaction to fall within this exception. *Id.* at 244, 395 A.2d 1182.

■ Clearly, this standard is met. We have already stated *supra* in part 4 of this opinion that there was sufficient evidence to support a finding of a conspiracy. In addition, there was ample evidence to link appellant to the Bernard's Menswear robbery, independent of the robbery at Thom McAn's.

The trial judge did not err in denying the motion for severance.

JUDGMENTS AFFIRMED; APPELLANT TO PAY THE COSTS.