Terance Garner v. State of Maryland, No. 41, September Term, 2014

**USE OF A HANDGUN IN THE COMMISSION OF A CRIME OF VIOLENCE OR ANY FELONY – UNIT OF PROSECUTION – MERGER – SENTENCING –** Court of Appeals held that, under Md. Code Ann., Crim. Law (2002, 2012 Repl. Vol.) ("CR") § 4-204, imposition of separate consecutive sentences for two convictions of use of handgun in commission of crime of violence or any felony is permissible where defendant uses one handgun to commit two separate crimes of violence or felonies against one victim in one criminal transaction because unit of prosecution is crime of violence, not victim or criminal transaction. Court of Appeals also held that case should be remanded for re-sentencing because trial court did not impose sentence consistent with CR § 4-204.

IN THE COURT OF APPEALS

OF MARYLAND

No. 41

September Term, 2014
_____

TERANCE GARNER

v.

STATE OF MARYLAND
_____

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.
_____

Opinion by Watts, J.
_____

Filed:  March 27, 2015

We decide: (I) whether, under Md. Code Ann., Crim. Law (2002, 2012 Repl. Vol.) ("CR") § 4-204, imposition of separate consecutive sentences for two convictions of use of a handgun in the commission of a crime of violence or any felony is permissible where a defendant uses one handgun to commit two separate crimes of violence or felonies against one victim in one criminal transaction; and (II) whether this case should be remanded for re-sentencing on the ground that the trial court imposed a sentence that was inconsistent with CR § 4-204.

We hold that: (I) under CR § 4-204, imposition of separate consecutive sentences for two convictions for use of a handgun in the commission of a crime of violence or any felony is permissible where a defendant uses one handgun to commit two separate crimes of violence or felonies against one victim in one criminal transaction because the unit of prosecution is the crime of violence, not the victim or criminal transaction; and (II) this case should be remanded for re-sentencing because the trial court did not impose a sentence that was consistent with CR § 4-204.

## BACKGROUND

The State, Respondent/Cross-Petitioner, charged Terance Garner ("Garner"), Petitioner/Cross-Respondent, in the Circuit Court for Baltimore City ("the circuit court"), in Case Numbers 111031032 and 111031033, with various crimes, including attempted first-degree murder and attempted robbery with a dangerous weapon. In the circuit court, a jury tried Garner and his co-defendant, Davon Butler ("Butler").

### Trial

At trial, as a witness for the State, Baltimore Police Officer Jacob Reed ("Officer

Reed"), who worked in the Southeastern District, testified as follows. On December 18, 2010, he was on patrol at approximately 6:00 a.m. when he received a call "for shots fired" in the 100 block of North Ellwood Avenue in Baltimore City. Officer Reed drove to that location and saw a man lying between two vehicles. The man appeared to be suffering from several gunshot wounds to the neck, stomach, and right leg. The man told Officer Reed: "[T]hey tried to rob me." After Officer Reed asked the man who shot him, the man said "black guys" and "point[ed] northbound." Officer Reed saw seven shell casings on the ground approximately six or seven feet away from the man. Officer Reed also saw a winter coat, a cellular telephone, a set of keys, a flash drive, and one shoe on the ground near the man. Officer Reed secured the scene; no suspects were apprehended on the day of the shooting.

As a witness for the State, Detective Frank Miller with the Baltimore City Homicide Unit testified that, on December 27, 2010, the man identified Garner from a photographic array.

As a witness for the State, the man, Ben Baya WaBeya ("WaBeya") testified as follows. WaBeya is a native of the Democratic Republic of Congo, who fled his native country and was granted asylum in the United States. WaBeya lived in the Highlandtown neighborhood of Baltimore City and worked at Casa de Maryland, which was located four blocks from his residence.

On December 18, 2010, WaBeya decided to walk to work in the morning rather than wait for the bus. As he was walking, two men, whom WaBeya identified as Garner and Butler, stopped him. Garner and Butler asked WaBeya: "[C]an we get the weed? Can you

give us the weed?" WaBeya saw one of the men move his hands, and feared that the man

might be armed with a knife, so WaBeya turned and ran from East Fayette Street to North

Ellwood Avenue. As WaBeya ran, he was hit by two bullets and felt pain in his right leg.

WaBeya could not continue running and sat down on North Ellwood Avenue between two

vehicles. Garner and Butler chased after WaBeya and caught up with him. The following

occurred:

> [Garner] came to me with a gun, he point me a gun, give me your money. This one was there with him. I look at them when I was sitting down. The first thing -- I say, brothers, I don't have money. I tried to talk to them politely, I say, brothers, I don't have money.

> [Garner] talk to this guy, he tell him to go and check the movement of the police. [Butler] left where he was, he go to the corner of [East] Fayette and [N]orth El[l]wood trying to see the movement of the police and people coming.

> So, I remember this guy face to face pointing me a gun. He start shooting me over and over. When he shot me four bullets on my leg, I feel very pain, I say I don't have money. I remove all my clothes that I have at that time, I remove the jacket, everything. I let them, I said you can check, if you see the money, take the money, leave me. The man say, where is the money? Check your underwear, he thought I was having the money in the underwear, something like that.

> The man start again, he shoot me again, four bullets this side. He repeat again, he shoot me a bullet here. So, I feel like it was very serious and the man doesn't have compassion for human beings.

> I cry in my heart, I'm going to die now. So, I say, my brother, can you take whatever you want? And the last thing it was, take even my shoes. The man didn't want, he shoot me four bullets in my stomach here, shot me like this. Suddenly I see myself, my inside come like this on me and I see that it was over for me.

> What happened to me is I remember that -- this before they want to take my life now, I tried to protect myself. There was a truck -- because I was between the cars where I was sitting. Suddenly I jump on the truck to

protect this part and my head.

> The man -- after I jump on the truck, this man come to me, he look on me on the truck, he shoot me this bullet here, the last one, on the side of the neck. For me everything was over and I left where I was hanging, they ran away. After they ran away I see myself sitting on my blood.

WaBeya emptied his pockets to show Garner and Butler that he did not have any money. WaBeya identified various items found on the street as his belongings, including a jacket, a shoe, and a flash drive. WaBeya incurred injuries to his right femur, chest, left hand, and neck. As a result of the shooting, WaBeya was hospitalized for four months, and suffered permanent injuries;[1] three bullets were unable to be removed.

At the conclusion of the trial, the jury convicted Garner, in Case Number 111031032, of attempted robbery with a dangerous weapon, first-degree assault, use of a handgun in the commission of a crime of violence,[2] and unlawfully wearing, carrying, or transporting a handgun, and, in Case Number 111031033, of attempted first-degree murder, use of a handgun in the commission of a crime of violence, and unlawfully wearing, carrying, or transporting a handgun.[3]

**Sentencing**

On June 29, 2012, the circuit court sentenced Garner to thirty years' imprisonment

---

[1]WaBeya testified that bullets to his right leg shattered his femur and that, even after surgery, he is unable to put weight on the leg "because it [is] so swollen and [he has] a pain on th[e] ankle every time when [he] want[s] to make this movement."

[2]Although CR § 4-204(b) prohibits the use of a handgun in the commission of a crime of violence or any felony, for brevity, we refer to the offense as "use of a handgun in the commission of a crime of violence."

[3]In a related case, Case Number 111031031, the jury acquitted Garner of conspiracy to commit robbery with a dangerous weapon and conspiracy to commit robbery.

for attempted first-degree murder; twenty years' imprisonment consecutive for use of a handgun in the commission of a crime of violence, the first five years to be served without the possibility of parole; fifteen years' imprisonment concurrent for attempted robbery with a dangerous weapon; and one year imprisonment consecutive for the second conviction for use of a handgun in the commission of a crime of violence. For sentencing purposes, the conviction for first-degree assault merged with the conviction for attempted robbery with a dangerous weapon, and the two convictions for unlawfully wearing, carrying, or transporting a handgun merged with the two convictions for use of a handgun in the commission of a crime of violence.

## Other Procedural History

Garner appealed, and, in an unreported opinion, the Court of Special Appeals affirmed, holding that the circuit court was correct in sentencing Garner to separate consecutive sentences for the two convictions for use of a handgun in the commission of a crime of violence. The Court of Special Appeals observed that, under CR § 4-204(c)(1), a sentencing court is required to impose a minimum sentence of five years' imprisonment, but, "[f]or some reason, the [circuit] court in this case only imposed a one-year sentence[.]" The Court of Special Appeals reasoned, however, that, under the plain language of CR § 4-204(c)(2), the circuit court "did not impose an illegal sentence[.]"[4]

---

[4]The Court of Special Appeals provided the following explanation: "[CR] § 4-204(c)(2) requires that '[f]or each subsequent violation, the sentence shall be consecutive to and not concurrent with any other sentence imposed for the crime of violence or felony.' Under the plain language of the statute, we conclude the [circuit] court did not impose an illegal sentence." (Second alteration in original).

Garner petitioned for a writ of *certiorari,* raising one issue: "Are separate consecutive sentences for use of a handgun in the commission of a crime of violence prohibited when a single handgun is used in committing two crimes against a single victim in one transaction?" The State conditionally cross-petitioned for a writ of *certiorari*, raising one issue: "Where the Court of Special Appeals correctly determined that the [circuit] court imposed an illegal sentence, but failed to correct that illegal sentence, should this Court correct the illegal nature of the sentence?" This Court granted the petition and the conditional cross-petition. See Garner v. State, 438 Md. 739, 93 A.3d 288 (2014).

## DISCUSSION

### I.

Garner contends that separate consecutive sentences for two convictions for use of a handgun in the commission of a crime of violence are prohibited where one handgun is used to commit two crimes against one victim in one criminal transaction.[5] Garner argues that the victim, not the underlying crime of violence, is the unit of prosecution for the crime of use of a handgun in the commission of a crime of violence; Garner asserts that, in this case, because there was only one victim, two convictions and sentences are impermissible. Alternatively, Garner maintains that, even if the unit of prosecution is the underlying crime of violence, the second conviction for use of a handgun in the commission of a crime of

_____

[5]Interestingly, later in his brief, Garner argues that the two convictions for use of a handgun in the commission of a crime of violence "stem[] from the same attempt to rob" WaBeya. Garner implicitly asserts that there was only one underlying crime of violence, contending that he was improperly sentenced to separate sentences "for the two convictions of use of a handgun in the commission of a crime of violence."

violence must merge for sentencing purposes with the first conviction under the required evidence test, the rule of lenity, and the principle of fundamental fairness.

The State responds that the circuit court was correct in imposing separate consecutive sentences for the two convictions for use of a handgun in the commission of a crime of violence. The State contends that the unit of prosecution for the crime of use of a handgun in the commission of a crime of violence is the underlying, "distinct crime of violence[.]" The State argues that each use of a handgun to commit a crime of violence is "a distinct wrong that warrant[s] separate punishment." The State asserts that the General Assembly intended each violation of CR § 4-204 to be subject to a separate penalty.

In a reply brief, Garner contends that this Court has interpreted CR § 4-204 to permit separate convictions and sentences only where there are multiple victims. Garner argues that the General Assembly has not evinced a clear intent to authorize multiple convictions for use of a handgun in the commission of a crime of violence where there is one victim and one criminal transaction.

The Fifth Amendment to the United States Constitution provides, in relevant part: "No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb[.]"[6] "The Double Jeopardy Clause protects a criminal defendant against . . . multiple punishment for the same offense." Brown v. State, 311 Md. 426, 431, 535 A.2d 485, 487

_____

[6]The Double Jeopardy Clause applies to the States through the Fourteenth Amendment. See Hubbard v. State, 395 Md. 73, 88, 909 A.2d 270, 279 (2006) ("In *Benton v. Maryland*, 395 U.S. 784, [796] (1969), the United States Supreme Court held that the Double Jeopardy Clause of the Fifth Amendment . . . was applicable to state criminal proceedings through the Fourteenth Amendment.").

(1988) (citations omitted). "Multiple punishment challenges generally arise" where a statute "proscribes designated conduct, and the question is whether the defendant's conduct constitutes more than one violation of this proscription." Id. at 431, 535 A.2d at 487 (citation omitted).

Here, the question is whether the unit of prosecution for use of a handgun in the commission of a crime of violence is the victim or the underlying crime of violence. "[W]hether a particular course of conduct constitutes one or more violations of a single statutory offense . . . turn[s] on the unit of prosecution of the offense[, which] is ordinarily determined by reference to legislative intent." Purnell v. State, 375 Md. 678, 692, 827 A.2d 68, 76 (2003) (citation and internal quotation marks omitted); see also Moore v. State, 198 Md. App. 655, 680, 18 A.3d 981, 995 (2011) ("The key to the determination of the unit of prosecution is legislative intent." (Citations omitted)); Triggs v. State, 382 Md. 27, 43, 852 A.2d 114, 124 (2004) ("[T]he unit of prosecution reflected in the statute controls whether multiple sentences ultimately may be imposed."). Legislative intent, in turn, is determined by "look[ing] first to the words of the statute, read in the light of the full context in which they appear, and in light of external manifestations of intent or general purpose available through other evidence." Davis v. State, 319 Md. 56, 60, 570 A.2d 855, 857 (1990) (citation and internal quotation marks omitted).

In State v. Weems, 429 Md. 329, 337, 55 A.3d 921, 926 (2012), we reiterated the general rules of statutory interpretation, stating:

> To ascertain the intent of the General Assembly, we begin with the normal, plain meaning of the statute. If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our

inquiry as to the legislative intent ends ordinarily and we apply the statute as written without resort to other rules of construction.

* * *

We, however, do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone. Rather, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the [General Assembly] in enacting the statute.

(Citation omitted) (asterisks in original).

We begin by setting forth the pertinent statute's language. CR § 4-204, entitled "Use of a handgun or antique firearm in commission of crime," provides, in its entirety, as follows:

(a) *"Firearm" defined*. — (1) In this section, "firearm" means:
    (i) a weapon that expels, is designed to expel, or may readily be converted to expel a projectile by the action of an explosive; or
    (ii) the frame or receiver of such a weapon.
  (2) "Firearm" includes an antique firearm, handgun, rifle, shotgun, short-barreled rifle, short-barreled shotgun, starter gun, or any other firearm, whether loaded or unloaded.

(b) *Prohibited*. — A person may not use a firearm in the commission of a crime of violence, as defined in § 5-101 of the Public Safety Article,[7] or any felony, whether the firearm is operable or inoperable at the time of the crime.

(c) *Penalty*. — (1) (i) A person who violates this section is guilty of a misdemeanor and, in addition to any other penalty imposed for the crime of violence or felony, shall be sentenced to imprisonment for not less than 5 years and not exceeding 20 years.
    (ii) The court may not impose less than the minimum sentence of 5 years and, except as otherwise provided in § 4-305 of the Correctional

---

[7]Md. Code Ann., Pub. Safety (2003, 2011 Repl. Vol.) § 5-101(c) defines "crime of violence" as, among other crimes, "assault in the first or second degree[,]" "murder in the first or second degree[,]" "robbery[,]" "robbery with a dangerous weapon[,]" and "an attempt to commit any of the crimes listed" in that subsection.

- 9 -

Services Article, the person is not eligible for parole in less than 5 years.

(2) For each subsequent violation, the sentence shall be consecutive to and not concurrent with any other sentence imposed for the crime of violence or felony.

In Brown, 311 Md. at 434-35, 535 A.2d at 489, this Court held that the unit of prosecution for use of a handgun in the commission of a crime of violence, as set forth in Art. 27, § 36B(d)—CR § 4-204's predecessor[8]—was the crime of violence. In Brown, 311 Md. at 429, 535 A.2d at 486, in two cases, the defendant was convicted of, and separately sentenced for, six counts of use of the handgun in the commission of a crime of violence. In the first case, "the crimes of violence were two armed robberies arising from a single criminal transaction involving two victims"; and, in the second case, "the crimes of violence were four armed robberies arising from a single criminal transaction involving four victims." Id. at 433, 535 A.2d at 488. Before this Court, the defendant contended that the unit of prosecution under Art. 27, § 36B(d) was the criminal transaction. Id. at 434, 535 A.2d at 488. We disagreed with the defendant, and instead agreed with the State that the unit of prosecution under Art. 27, § 36B(d) was the crime of violence. Id. at 434, 535 A.2d at 489. We concluded that Art. 27, § 36B(d)'s language "plainly indicate[d] that the prohibited act is the use of a handgun in the commission of a felony or violent misdemeanor[,]" and explained:

[Art. 27, §] 36B(d) states, with emphasis added, that "[a]ny person who shall

---

[8]Art. 27, § 36B(d) provided, in pertinent part: "Any person who shall use a handgun . . . in the commission of any felony or any crime of violence as defined in § 441 of this article, shall be guilty of a separate misdemeanor[.]" Brown, 311 Md. at 433 n.7, 535 A.2d at 488 n.7.

CR § 4-204's Revisor's Note states: "This section is new language derived without substantive change from former Art. 27, § 36B(d)."

use a handgun in the commission of *any* felony or *any* crime of violence" is guilty of a handgun use offense. According to *Webster's New International Dictionary* (unabr. ed. 1959), "any" is defined as

> "[i]ndicating a person, thing, etc., as one selected without restriction or limitation of choice, with the implication that everyone is open to selection without exception; one, no matter what one; all, taken distributively; every."

> To like effect, *see Black's Law Dictionary* (5th ed. 1979). . . . "Any" appears not only before the words "felony" and "crime of violence" but also before the word "person." We find that the [General Assembly]'s use of the term "any" before "person" imparts a clear and unambiguous meaning to its use of "any" before "felony" and "crime of violence" and the meaning imparted is one which is consistent with the ordinary meaning of "any." It means "every." At least in the context of multiple victims, nothing in the language of [Art. 27,] § 36B(d) suggests, as argued by [the defendant], that there can be only one handgun use offense per criminal transaction.

Brown, 311 Md. at 435-36, 535 A.2d at 489 (emphasis and some alterations in original).

We concluded, after review of the legislative history of Art. 27, § 36B(d), that there was "no support for the position advanced by" the defendant—that the unit of prosecution was the criminal transaction—and, accordingly, this Court enforced the statute "as written" and affirmed the convictions for use of a handgun in the commission of a crime of violence. Id. at 436, 535 A.2d at 490.[9]

---

[9]Even before Brown, the Court of Special Appeals stated that the unit of prosecution for use of a handgun in the commission of a crime of violence under Art. 27, § 36B(d) was the crime of violence. See, e.g., Battle v. State, 65 Md. App. 38, 50-51, 499 A.2d 200, 206-07 (1985), cert. denied, 305 Md. 243, 503 A.2d 252 (1986) ("In order for us properly to affirm the convictions in the handgun counts in the case *sub judice*, we need only find sufficient evidence that there were two separate underlying crimes of violence, and that a handgun was used in each. That both of the underlying crimes evolved from one act of the [defendant]—the use of the handgun—does not preclude such a finding."); Manigault v. State, 61 Md. App. 271, 283, 486 A.2d 240, 246 (1985) ("A defendant might well be guilty of premeditated first-degree murder perpetrated in the course of an armed robbery. The

After Brown, both this Court and the Court of Special Appeals continued to recognize that the unit of prosecution for use of a handgun in the commission of a crime of violence is the crime of violence. For example, in Webb v. State, 311 Md. 610, 617, 536 A.2d 1161, 1165 (1988), in discussing Art. 27, § 36B(d), we explained:

> This is not a possession crime and is not a continuing offense. It consists of a definite act or a definite result of some act. If the circumstances involving the use of the prohibited weapon put two persons at risk or concern two distinct incidents, there are two separate and distinct violations of the statute, permitting two convictions and two punishments. The unit of prosecution is the crime of violence. This is so because the act prohibited by [Art. 27,] § 36B(d) is the use of a handgun in the commission of a felony or violent misdemeanor.

(Citations and internal quotation marks omitted).[10] And, in Curtin v. State, 165 Md. App. 60, 75-76, 884 A.2d 758, 767 (2005), aff'd, 393 Md. 593, 903 A.2d 922 (2006), the Court of Special Appeals rejected the defendant's argument that CR § 4-204 somehow mandated identifying a different unit of prosecution than Art. 27, § 36B(d), stating:

> In *Brown v. State*, 311 Md. 426, 535 A.2d 485 (1988), the Court of Appeals made clear that, under former [Art. 27, §] 36B(d), the unit of prosecution for use of a handgun in the commission of a crime of violence was the number of crimes of violence against each victim. . . . [The defendant] does not attempt to distinguish his case from *Brown*, but asks us

---

fact of premeditation would preclude a merger of the robbery into the murder; there would be two separate crimes of violence—murder and robbery. Each could support a separate conviction for the use of a handgun to commit a crime of violence.").

[10]In Webb, 311 Md. at 618-19, 536 A.2d at 1165-66, we held that a defendant could not be twice convicted and sentenced for wearing, carrying, or transporting a handgun where the defendant continuously and unlawfully carried the same handgun for a period of three hours. We held that "[t]he unit of prosecution of that continuing crime is the wearing, carrying or transporting of any handgun, whether concealed or open, upon or about the person. There is no requirement as to time, use, person at risk or incident. We cannot read into the plain language of the section the intent that a lapse of time or more than one person put at risk or multiple incidents would initiate separate offenses." Id. at 617-18, 536 A.2d at 1165 (footnote omitted).

to interpret recodified [CR §] 4-204 as now precluding the imposition of multiple sentences in situations like his own. . . . After considering [the defendant]'s arguments, we are unpersuaded. . . . We find no support for the position advanced by [the defendant] that [CR §] 4-204 now requires reaching a different conclusion than that advanced by the Court of Appeals when interpreting [Art. 27, §] 36B(d) in *Brown*.

(Paragraph breaks omitted).

Here, we hold that, under CR § 4-204, imposition of separate consecutive sentences for two convictions for use of a handgun in the commission of a crime of violence is permissible where a defendant uses one handgun to commit two separate crimes of violence against one victim in one criminal transaction because the unit of prosecution is the crime of violence, not the victim or criminal transaction.

CR § 4-204(b)'s plain language provides, in pertinent part, that "[a] person may not use a firearm in the commission of a crime of violence, as defined in § 5-101 of the Public Safety Article, or any felony[.]" CR § 4-204(b)'s language is clear and unambiguous—a person may not use a handgun to commit a statutorily defined crime of violence or any felony. In other words, CR § 4-204(b) criminalizes the use of a handgun in any felony (without limitation on which felony) or in one of the statutorily defined crimes of violence (limiting the crime of violence to those defined by statute). It is the crime of violence or felony, not the victim or the criminal transaction, that forms the basis for the handgun conviction; indeed, CR § 4-204 makes no mention whatsoever of the victim or the criminal transaction. Thus, CR § 4-204 criminalizes the use of a handgun in each felony or crime of violence committed by a defendant; stated otherwise, a defendant may be convicted of, and sentenced for, use of a handgun in the commission of a crime of violence corresponding

- 13 -

to each underlying felony or crime of violence of which the defendant is convicted. CR § 4-204(b)'s plain language demonstrates the General Assembly's intent to permit multiple convictions and sentences for each violation of CR § 4-204; in other words, CR § 4-204(b)'s plain language leads to the inescapable conclusion that CR § 4-204 authorizes a separate conviction and sentence for each felony or crime of violence.

Because we conclude that CR § 4-204(b)'s language is unambiguous and clearly consistent with CR § 4-204's apparent purpose—to criminalize the use of a handgun in each felony or crime of violence—we need not delve into the General Assembly's intent. Lest there be any doubt, however, that the unit of prosecution for use of a handgun in the commission of a crime of violence is the crime of violence, we note that our conclusion is bolstered by the long history of this Court and the Court of Special Appeals of reaching the same conclusion as to both CR § 4-204 and its predecessor. See, e.g., Webb, 311 Md. at 617, 536 A.2d at 1165 ("The unit of prosecution is the crime of violence. This is so because the act prohibited by [the statute] is the use of a handgun in the commission of a felony or violent misdemeanor." (Citation and internal quotation marks omitted)); Brown, 311 Md. at 435-36, 535 A.2d at 489 (The statute "plainly indicate[d] that the prohibited act is the use of a handgun in the commission of a felony or violent misdemeanor . . . . At least in the context of multiple victims, nothing in the language of [the statute] suggests . . . that there can be only one handgun use offense per criminal transaction."); Curtin, 165 Md. App. at 75-76, 884 A.2d at 767 ("[T]he Court of Appeals made clear that . . . the unit of prosecution . . . was the number of crimes of violence against each victim. . . . We find no support for the position advanced by [the defendant] that [the statute] now requires

reaching a different conclusion than that advanced by the Court of Appeals . . . in *Brown*.");

Battle v. State, 65 Md. App. 38, 50-51, 499 A.2d 200, 206-07 (1985), cert. denied, 305 Md. 243, 503 A.2d 252 (1986) ("[W]e need only find sufficient evidence that there were two separate underlying crimes of violence, and that a handgun was used in each. That both of the underlying crimes evolved from one act of the [defendant]—the use of the handgun— does not preclude such a finding."); Manigault v. State, 61 Md. App. 271, 283, 486 A.2d 240, 246 (1985) ("[T]here would be two separate crimes of violence—murder and robbery. Each could support a separate conviction for the use of a handgun to commit a crime of violence.").

We reject Garner's contention that, in Brown, we held that the statute permits separate convictions and sentences only where there are multiple victims. To be sure, Brown, 311 Md. at 429, 433, 535 A.2d at 486, 488, involved the circumstance that there were two armed robberies, each involving multiple victims, and thus, our analysis was guided by that circumstance. Nevertheless, nothing in Brown mandates that the unit of prosecution for use of a handgun in the commission of a crime of violence is the victim. Obviously, where there are multiple victims, multiple convictions and sentences for use of a handgun in the commission of a crime of violence are permissible. Whether there are multiple victims or only one victim, however, the unit of prosecution—the crime of violence—does not change. Stated otherwise, the unit of prosecution for the crime of use of a handgun in the commission of a crime of violence is the crime of violence, be there one victim, two victims, or a hundred victims. As a corollary, because the unit of prosecution is the crime of violence, it follows that, if more than one crime of violence is

- 15 -

committed against one victim, there may be multiple convictions and sentences for use of a handgun in the commission of a crime of violence for each separate crime of violence or felony committed against the victim.

As we did in Webb, 311 Md. at 617-18, 536 A.2d at 1165, we note that there is a difference between use of a handgun in the commission of a crime of violence and wearing, carrying, or transporting a handgun. The former is "a definite act or a definite result of some act[,]" *i.e.*, an affirmative act; by contrast, the latter is a "continuing crime" of possession with "no requirement as to time, use, person at risk or incident." Id. at 617-18, 536 A.2d at 1165. Thus, so long as there is sufficient evidence to support the conviction for each underlying crime of violence, and a handgun was used in each, it is not dispositive that the crimes of violence occurred during one criminal transaction or against one victim. See Battle, 65 Md. App. at 50-51, 499 A.2d at 206-07 ("[W]e need only find sufficient evidence that there were two separate underlying crimes of violence, and that a handgun was used in each. That both of the underlying crimes evolved from one act of the [defendant]—the use of the handgun—does not preclude such a finding.").

Here, there is sufficient evidence to support Garner's convictions for attempted first-degree murder and attempted robbery with a dangerous weapon. WaBeya's testimony demonstrates the following. Garner and Butler approached WaBeya in the early morning hours asking for "weed[.]" WaBeya feared the two men might have been armed; WaBeya ran and was hit by two bullets. Garner and Butler chased WaBeya, and Garner pointed a gun at WaBeya and demanded money. After WaBeya stated that he did not have any money, Garner shot WaBeya multiple times in the leg. WaBeya removed his jacket and

emptied his pockets to show Garner that he did not have any money, but Garner asked: "[W]here is the money?" Garner shot WaBeya several more times, despite WaBeya's insistence that he did not have money. After WaBeya attempted to escape by jumping toward a truck, Garner approached WaBeya and shot WaBeya in the neck. These facts lead to the conclusion that Garner, while using a handgun, attempted to rob WaBeya by pointing the gun at WaBeya and shooting him while demanding money; and that Garner, while using a handgun, attempted to murder WaBeya by taking a final shot at WaBeya, wounding him in the neck, while WaBeya was hiding near the truck. These facts demonstrate that the conduct supporting the conviction for attempted first-degree murder, although committed against the same victim and in the same criminal transaction, was separate and distinct from the conduct supporting the conviction for attempted robbery with a dangerous weapon. Because there was sufficient evidence to support Garner's convictions for attempted first-degree murder and attempted robbery with a dangerous weapon, both involving use of a handgun, there was sufficient evidence to support two convictions for use of a handgun in the commission of a crime of violence.[11]

---

[11]We are unconvinced by Garner's reliance on cases from Illinois, Iowa, and Georgia for the contention that the appropriate unit of prosecution under CR § 4-204 is the victim and not the crime of violence. Significantly, none of the cases on which Garner relies involves CR § 4-204's language. In any event, the cases are factually and legally distinguishable.

For example, in People v. Mimes, 13 N.E.3d 222, 225, 227 (Ill. App. Ct. 2014), the defendant was convicted of attempted first-degree murder, aggravated battery with a firearm, and two counts of aggravated unlawful use of a weapon (one count stemming from knowingly carrying "on his person an uncased, loaded and accessible firearm while not on his own land or in his own abode or fixed place of business" and one count stemming from possessing "an uncased, loaded and accessible firearm upon public land"). On appeal, the

We are unpersuaded by Garner's reliance on Johnson v. State, 56 Md. App. 205, 219, 467 A.2d 544, 550-51 (1983), cert. denied, 299 Md. 136, 472 A.2d 999 (1984), in which the Court of Special Appeals held that, under the rule of lenity, "use of a single handgun against a single victim in a single transaction does not permit the imposition of consecutive handgun sentences." At the time, Art. 27, § 36B(d) made "it a 'separate misdemeanor for a person to use a handgun in the commission of any felony or crime of violence' and call[ed] for a sentence for that use 'in addition to any other sentence imposed by virtue of the commission of said felony[.]'" Id. at 218, 467 A.2d at 550 (emphasis omitted). The Court of Special Appeals acknowledged that the General Assembly

---

defendant contended that his convictions for aggravated battery and aggravated unlawful use of a weapon violated the "one-act, one-crime rule[,]" which, in Illinois, is the rule that "prohibits multiple convictions when (1) the convictions are carved from precisely the same physical act, or (2) one of the offenses is a lesser-included offense of the other." Id. at 225, 234 (citation omitted). Based on that rule, the Appellate Court of Illinois determined that the defendant's conviction for aggravated battery needed to be vacated "because it was predicated on the same act as his attempted murder conviction"; in other words, "[b]ecause the two relevant counts of the indictment charged [the] defendant with the same physical act, i.e., shooting the victim with a firearm, the lesser felony, aggravated battery with a firearm, must be vacated." Id. at 234 (citation omitted). The Appellate Court of Illinois concluded that one of the two aggravated unlawful use convictions needed to be vacated because the two convictions "stem[med] from the same physical act of carrying an uncased, loaded and accessible firearm in public[.]" Id. (citation omitted). Thus, in Mimes, the Appellate Court of Illinois addressed the relevance of the physical acts underlying the convictions, and whether the same physical act formed the basis for more than one conviction.

Under CR § 4-204, the focus is on the underlying crimes of violence, not the physical acts involved in those crimes of violence. In this case, there were two separate crimes of violence—attempted first-degree murder and attempted robbery with a dangerous weapon. In any event, even if the focus were on the physical acts involved, there was sufficient evidence to establish that two distinct physical acts occurred during the criminal transaction: (1) shooting WaBeya in the leg, chest, and hand in an attempt to rob him; and (2) shooting WaBeya in the neck after no money was produced and WaBeya attempted to escape.

"intended to authorize multiple punishments for the underlying felony or crime of violence and for the separate misdemeanor of using a handgun to commit that felony or crime of violence." Id. at 218, 467 A.2d at 550. The Court of Special Appeals determined, however, that the statutory language was ambiguous and subject to multiple interpretations, including "that the legislative purpose of discouraging handgun use is achieved when one handgun sentence is imposed consecutive to the sentence imposed for one ('said') felony." Id. at 218, 467 A.2d at 550.

Significantly, Johnson was decided before this Court's decision in Brown, 311 Md. 426, 535 A.2d 485, and concerned an earlier version of Art. 27, § 36B(d). In Johnson, 56 Md. App. at 209, 467 A.2d at 545, the defendant was charged with offenses that occurred on October 29, 1981. After the defendant was charged, in 1982, the General Assembly amended Art. 27, § 36B(d) to add a new subsection "for the purpose of requiring a sentence for a second or subsequent conviction for use of a handgun in the commission of certain crimes to be served consecutively with the sentence imposed for those certain crimes[.]" 1982 Md. Laws 3055 (Ch. 475, S.B. 541) (capitalization omitted). Although Art. 27, § 36B(d)'s prior version was ambiguous as to whether the General Assembly intended to permit multiple punishments for use of a handgun in circumstances involving multiple crimes committed against one victim with one handgun in one criminal transaction, the amendment to Art. 27, § 36B(d) eliminated the ambiguity and expressly authorized consecutive punishment for a "second or subsequent offense[.]" Thus, Johnson was superseded by the amendment to Art. 27, § 36B(d), which then required the imposition of separate consecutive sentences for each conviction for use of a handgun in the commission

- 19 -

of a crime of violence.[12]

We reject Garner's contention that merger is required under the required evidence test, the rule of lenity, or the principle of fundamental fairness. In <u>Nicolas v. State</u>, 426 Md. 385, 401-02, 44 A.3d 396, 405-06 (2012), we described the required evidence test as follows:

> The required evidence test focuses upon the elements of each offense; if all of the elements of one offense are included in the other offense, so that only the latter offense contains a distinct element or distinct elements, the former merges into the latter. Stated another way, the required evidence is that which is minimally necessary to secure a conviction for each offense. If each offense requires proof of a fact which the other does not, or in other words, if each offense contains an element which the other does not, there is no merger under the required evidence test even though both offenses are based upon the same act or acts. But, where only one offense requires proof of an additional fact, so that all elements of one offense are present in the other, and where both offenses are based on the same act or acts[,] merger follows.

(Citations and ellipses omitted); <u>see also</u> <u>McGrath v. State</u>, 356 Md. 20, 24, 736 A.2d 1067, 1069 (1999) (The required evidence test "is a long-standing rule of law to determine whether one offense is included within another when both are based on the same act or acts." (Citation omitted)). The rule of lenity, on the other hand, "applicable to statutory offenses only, provides that where there is no indication that the [General Assembly]

---

[12]It is not dispositive that the Court of Special Appeals seemingly reaffirmed its holding in <u>Johnson</u> in <u>Billups v. State</u>, 135 Md. App. 345, 361-62, 762 A.2d 609, 618-19 (2000), <u>cert. denied</u>, 363 Md. 207, 768 A.2d 55 (2001). In <u>Billups</u>, 135 Md. App. at 361-62, 762 A.2d at 618-19, the Court of Special Appeals failed to examine or mention the controlling statutory language or acknowledge that Art. 27, § 36B(d) had been amended to include a new penalty provision. Instead, in <u>Billups</u>, the Court of Special Appeals simply accepted its prior analysis in <u>Johnson</u> without conducting its own analysis or mentioning our holding in <u>Brown</u>.

intended multiple punishments for the same act, a court will not impose multiple punishments but will, for sentencing purposes, merge one offense into the other." McGrath, 356 Md. at 25, 736 A.2d at 1069 (citations omitted). We have described the principle of fundamental fairness as follows:

> Fundamental fairness is one of the most basic considerations in all our decisions in meting out punishment for a crime. In deciding whether fundamental fairness requires merger, we have looked to whether the two crimes are part and parcel of one another, such that one crime is an integral component of the other. This inquiry is fact-driven because it depends on the considering the circumstances surrounding a defendant's convictions, not solely the mere elements of the crimes. Rare are the circumstances in which fundamental fairness requires merger of separate convictions or sentences.

Carroll v. State, 428 Md. 679, 695, 53 A.3d 1159, 1168 (2012) (citations, brackets, ellipsis, footnotes, internal quotation marks, and paragraph break omitted). None of these three principles serves as a basis for merging for sentencing purposes Garner's two convictions for use of a handgun in the commission of a crime of violence.

Merger is not required under the required evidence test. To be sure, the elements of each conviction for use of a handgun in the commission of a crime of violence are, on their face, the same. Each conviction, however, is predicated on a different crime of violence, such that each conviction requires proof of an element which the other does not. In Case Number 111031032, use of a handgun in the commission of a crime of violence required proof of the underlying crime of violence—attempted robbery with a dangerous weapon. And, in Case Number 111031033, use of a handgun in the commission of a crime of violence required poof of a different underlying crime of violence at issue—attempted first-degree murder. The acts supporting the convictions for attempted robbery with a

dangerous weapon and attempted first-degree murder are separate and distinct.

The rule of lenity does not apply, as the General Assembly, through unambiguous language in CR § 4-204, demonstrated an intent to permit—and, indeed, require—multiple sentences for subsequent convictions for use of a handgun in the commission of a crime of violence. See CR § 4-204(c)(2) ("For each subsequent violation, the sentence shall be consecutive to and not concurrent with any other sentence imposed for the crime of violence or felony.").

The principle of fundamental fairness does not require merger. Although the two crimes took place against one victim during one criminal transaction, the crimes cannot be said to be part and parcel of one another because they are predicated upon separate distinct underlying crimes of violence.

As a final point, we note that, in Brown, we did not merge for sentencing purposes, under the required evidence test, the rule of lenity, or the principle of fundamental fairness, the convictions for the six counts of use of a handgun in the commission of a crime of violence. See Brown, 311 Md. at 436, 535 A.2d at 490 ("[M]ultiple handgun use convictions and sentences are appropriate[.]"). Accordingly, under CR § 4-204's plain language and under this case's circumstances, merger for sentencing purposes of the two convictions for use of a handgun in the commission of a crime of violence is not warranted.

**II.**

The State contends that the circuit court imposed a sentence not permitted by CR § 4-204 and that, accordingly, we should remand this case for re-sentencing consistent with CR § 4-204. The State argues that CR § 4-204 mandates imposition of a separate

- 22 -

consecutive sentence of not less than five years' imprisonment for a second conviction for use of a handgun in the commission of a crime of violence; thus, here, the circuit court erred in imposing a sentence of only one year of imprisonment. The State asserts that this Court may correct an illegal sentence at any time, even if the matter was not raised in the trial court.

Garner responds that a remand for re-sentencing is inappropriate because the prosecutor did not request, and the circuit court did not impose, a sentence pursuant to the "subsequent offender provision." Garner points out that the State did not cross-appeal concerning the sentence for the second conviction for use of a handgun in the commission of a crime of violence, and contends that the State "should not now receive the benefit of re-sentencing" under the circumstances.

Maryland Rule 4-345(a) provides that "[t]he court may correct an illegal sentence at any time." The power of the court to correct an illegal sentence exists on appeal even where the illegality of the sentence was not raised in the trial court. See, e.g., Mateen v. Saar, 376 Md. 385, 405, 829 A.2d 1007, 1018 (2003) ("[I]t is well established that a court may correct an illegal sentence on its own initiative and at any time, even upon appeal." (Citations omitted)); Ridgeway v. State, 369 Md. 165, 171-72, 797 A.2d 1287, 1290 (2002) ("As we have oft stated, the legality of a sentence may be determined at any time, even on appeal. . . . [H]ad the trial court not acted to correct the illegal sentence, the Court of Special Appeals and this Court would have similar authority to correct the [defendant]'s sentence by vacating and remanding to the trial court for resentencing." (Citations omitted)). In Chaney v. State, 397 Md. 460, 466, 918 A.2d 506, 509-10 (2007), we explained that a

sentence is "illegal" for purposes of Maryland Rule 4-345(a) where "there either has been no conviction warranting any sentence for the particular offense or the sentence is not a permitted one for the conviction upon which it was imposed and, for either reason, is intrinsically and substantively unlawful." (Citations omitted). Conversely, "any other deficiency in the sentence that may be grounds for an appellate court to vacate it— impermissible considerations in imposing it, for example—must ordinarily be raised in or decided by the trial court and presented for appellate review in a timely-filed direct appeal." Id. at 466-67, 918 A.2d at 510.

We are satisfied that this case should be remanded for re-sentencing because the circuit court imposed a sentence for the second conviction for use of a handgun in the commission of a crime of violence that was not permitted under CR § 4-204(c), and, thus, was an illegal sentence under Maryland Rule 4-345(a).

This Court has the authority to correct an illegal sentence, even in the absence of an appeal or a cross-appeal by the State. The case law providing that an illegal sentence may be corrected at any time does not indicate that the correction may be made only if it benefits the defendant. Indeed, in Hoile v. State, 404 Md. 591, 620, 623, 948 A.2d 30, 47-48, 49, (2008), although we concluded that the sentence of probation at issue in the case was not an illegal sentence, we recognized that "[t]he correction of an illegal sentence may result in an increase over the erroneous sentence previously imposed on the defendant." (Citations omitted). And, of course, "[t]he State may appeal from a final judgment if the State alleges that the trial judge: (i) Failed to impose the sentence specifically mandated by the Code[.]" Md. Code Ann., Cts. & Jud. Proc. (1973, 2013 Repl. Vol., 2014 Supp.) § 12-

302(c)(3)(i). An appellate court may correct an illegal sentence regardless of which party appealed. See, e.g., Md. R. 4-345(a) ("[T]he court may correct an illegal sentence **at any time**." (Emphasis added)); Mateen, 376 Md. at 405, 829 A.2d at 1018 ("[I]t is well established that a court may correct an illegal sentence **on its own initiative** and **at any time**, even upon appeal." (Citations omitted) (emphasis added)).

Under CR § 4-204(c)'s plain language, a person who is convicted of use of a handgun in the commission of a crime of violence "shall be sentenced to imprisonment for not less than 5 years and not exceeding 20 years" and, for subsequent violations, "the sentence shall be consecutive to and not concurrent with any other sentence imposed for the crime of violence or felony." CR § 4-204(c)(1)(ii) clearly provides that "[t]he court may not impose less than the minimum sentence of 5 years[.]" In other words, CR § 4-204(c) does not give a trial court the discretion to impose a sentence that is less than the mandatory minimum. Cf. State v. Stewart, 368 Md. 26, 30-31, 791 A.2d 143, 146 (2002) ("The State argues that this Court has held that whenever the statutory requirements are met and notice given, a trial court must impose the sentence prescribed in the mandatory sentencing statute. Thus, the State concludes that the trial court erred in declining to sentence [the defendant] to the mandatory sentence . . . . We agree with the State."). Here, the sentence of one year imprisonment consecutive for the second conviction of use of a handgun in the commission of a crime of violence is below the mandatory minimum of

"not less than 5 years[,]" and, as such, it is an illegal sentence.[13]

We reject Garner's contention that the imposition of a sentence for the second conviction for use of a handgun in the commission of a crime of violence constitutes sentencing under a "subsequent offender provision" for which the State failed to provide notice. To be sure, Maryland Rule 4-245(c) requires the State to file notice where it intends to seek a mandatory penalty for a subsequent offender. Maryland Rule 4-245(a) defines "subsequent offender" as "a defendant who, because of a prior conviction, is subject to additional or mandatory statutory punishment for the offense charged." The penalty provision of CR § 4-204, however, is not premised on a "prior conviction," but instead is premised on a contemporaneous violation of CR § 4-204 itself (*i.e.*, "each subsequent violation"). Nothing in Maryland Rule 4-245 suggests that the phrase "prior conviction" includes a contemporaneous conviction, and nothing in CR § 4-204(c) provides for enhanced penalties for a "subsequent offender." Garner's contention lacks merit.

For the above reasons, the circuit court imposed an illegal sentence for Garner's second conviction of use of a handgun in the commission of a crime of violence. That sentence shall be vacated, and this case shall be remanded for re-sentencing in accordance with the mandatory minimum under CR § 4-204(c).

> **JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED INSOFAR AS THAT COURT AFFIRMED ONE-YEAR SENTENCE**

---

[13]Tellingly, at oral argument, Garner conceded that, "technically," the sentence imposed for the second conviction for use of a handgun in the commission of a crime of violence "is illegal" because only one year of imprisonment was imposed instead of the mandatory minimum of five years' imprisonment.

**FOR SECOND CONVICTION FOR USE OF HANDGUN IN COMMISSION OF CRIME OF VIOLENCE OR ANY FELONY. JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN ALL OTHER RESPECTS. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE ONE-YEAR SENTENCE FOR SECOND CONVICTION FOR USE OF HANDGUN IN CRIME OF VIOLENCE OR ANY FELONY AND TO REMAND TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR RE-SENTENCING ONLY AS TO SECOND CONVICTION FOR USE OF HANDGUN IN CRIME OF VIOLENCE OR ANY FELONY. PETITIONER/CROSS-RESPONDENT TO PAY COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS.**